Lauren N. Vega (State Bar No. 306525)
Nicholas J. Ferraro (State Bar No. 306528)
Ferraro Vega Employment Lawyers, Inc.
3160 Camino del Rio South, Suite 308
San Diego, California 92108
(619) 693-7727 main / (619) 350-6855 facsimile
lauren@ferrarovega.com / nick@ferrarovega.com

Attorneys for Plaintiff Ana Garcia

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA GARCIA, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>STG INTERNATIONAL, INC., a Virginia Corporation,<br><br>          Defendant. | Case No. 20-CV-1701-AJB (AHG)<br><br>**Memorandum of Points & Authorities in Support of Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement**<br><br>Action Filed:     August 31, 2020<br>Trial Date:       Not Set<br><br>Preliminary Approval Hearing<br>Date:       June 9, 2022<br>Time:       2:00 p.m.<br>Judge:      Hon. Anthony J. Battaglia<br>Courtroom:  4A |

## <u>TABLE OF CONTENTS</u>

I.      **INTRODUCTION** .........................................................................1

II.    **BACKGROUND** ............................................................................1

A.    **Summary of the Parties, Investigation, Litigation, and Settlement** ....1

B.    **Overview of the Settlement Terms** ...............................................5

C.    **Settlement Administration and Notice Procedures** .........................8

D.    **Distribution and FLSA Consent Procedures** .................................9

E.    **The "Released Claims"** ..............................................................11

III.   **LEGAL ARGUMENT** .................................................................11

A.    **Provisional Class Certification Under Rule 23 and Conditional Certification Under 29 U.S.C. § 216(b) is Appropriate** ....................12

     1.   Numerosity – *142 Class Members / 1,273 Collective Members* .........13

     2.   Commonality – *All claims are for wage and hour violations* .............13

     3.   Typicality – *Plaintiff suffered the same alleged harms as others* .......14

     4.   Adequacy of Representation – *There are no conflicts* ........................14

     5.   Predominance & Superiority – *Class-wide resolution is proper* .......15

     6.   Appointment of Class Counsel – *Counsel satisfies Rule 23(g)* ..........16

B.    **The Proposed Settlement Warrants Preliminary Approval** ..............17

     1.   Adequacy of Representation ...................................................18

     2.   Arm's Length Negotiation ....................................................18

     3.   Adequacy of Relief Provided to the Class ................................18

     4.   Equitable treatment of Class Members ....................................23

C.    **The Court Should Approve the PAGA Settlement** ..........................24

IV.   **CONCLUSION** ..........................................................................25

- i -

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

# TABLE OF AUTHORITIES

**Cases**

*Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 17, 2019)......25

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)........................................15

*Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955

   (N.D. Cal., Oct. 18, 2021) ...........................................................................21

*Bayat v. Bank of the West*, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............19

*Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ...............24

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)....................14

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ...................12, 21

*Cavazos v. Salas Concrete Inc.*,

   2022 WL 506005 (E.D. Cal., Feb. 18, 2022)........................................... 18, 20-21

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ...............................18

*Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43 (2008)..............................................22

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................11

*ConDawson v. Hitco Carbon Composites, Inc.*,

   2019 WL 6138467 (C.D. Cal. July 9, 2019) .......................................................20

*Contreras v. Armstrong Flooring, Inc.*,

   2021 WL 4352299 (C.D. Cal., July 6, 2021) .....................................................20

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............22

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012).................14

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................14

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1988) ................... 13-14, 17, 19

*Haralson v. U.S. Aviation Services Corp.*,

   383 F. Supp.3d 959 (N.D. Cal. 2019) ...........................................................24, 25

*Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452 .................................................25

*HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013) .........................19

*Khanna v. Inter-Con Sys., Inc.*, 2013 WL 1193485 (E.D. Cal. Mar. 22, 2013)......17

- ii -

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

*La Fleur v. Medical Management Intern, Inc.*,

   2014 WL 2967475 (C.D. Cal. June 25, 2014) ......................................24

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ..........................................22

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012). ...........................................17

*In re M.L. Stern Overtime Litig.*, 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ......25

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019).........25

*Mangold v. Cal. Pub. Utils Comm'n*, 67 F. 3d 1470 (9th Cir. 1995) ............... 21-22

*Martin v. AmeriPride Svs., Inc.*, 2011 WL 2313604 (S.D. Cal. June 9, 2011) .......22

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................18

*Otey v. CrowdFlower, Inc.*, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014)............18

*Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ..............................................14

*Pokorny v. Quixtar Inc.*, 2011 WL 2912864 (N.D. Cal. July 20, 2011) ................22

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013)....................15

*Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948 (9th Cir. 2009)............................19

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000)......................................13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................11

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).....................23

*Thompson v. Costco Wholesale Corp.*, No. 15-CV-2778-CAB-WVG

   (S.D. Cal., May 11, 2017). ...............................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .....................................15

*Vizcaino v. Microsoft Corp*, 290 F.3d 1043, 1047 (N.D. Cal. 2002) .....................22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)............................................13

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826

   (N.D. Cal. Apr. 1, 2011).......................................................................23

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

**Statutes**

29 U.S.C. § 201 ...................................................................................2, 10

29 U.S.C. § 216(b) ................................................................................*passim*

29 U.S.C. § 260 .........................................................................................8

Fed. R. Civ. P. 23(a). ..............................................................................*passim*

Fed. R. Civ. P. 23(b). ...............................................................12, 13, 15, 16

Fed. R. Civ. P. 23(g) ...............................................................................*passim*

Fed. R. Civ. P. 23(e) ...............................................................................*passim*

Labor Code § 2699 ...................................................................1, 24, 25

**Other Authorities**

4 William B. Rubenstein, Newberg on Class Actions (5th ed. 2020) ...............18, 23

## I.    INTRODUCTION

Plaintiff ANA GARCIA ("Plaintiff") seeks preliminary approval of this proposed wage and hour class, FLSA collective, and Private Attorneys General Act settlement with Defendant STG INTERNATIONAL, INC. ("Defendant" or "STGi"), based on the following submissions: (1) Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class and Collective Action Settlement; (2) this Memorandum of Points and Authorities; (3) the Declaration of Lauren N. Vega, including Exhibits A to E; and (4) the Proposed Order.

Plaintiff requests that the Court (i) conditionally certify the California Class under Rule 23(a) and the FLSA Collective under 29 U.S.C. § 216(b); (ii) appoint Plaintiff as the class representative and Plaintiff's counsel as Class Counsel under Rule 23(g); (iii) preliminarily approve the Settlement under Rule 23(e) and under 29 U.S.C. § 216(b); (iv) approve distribution of the Notice; (v) approve the proposed allocation to PAGA Penalties under Labor Code § 2699(l) (2); and, if granted, (vi) set a final approval hearing within 90 days.

## II.    BACKGROUND

### A.    Summary of the Parties, Investigation, Litigation, and Settlement

STGi is a government contractor that employs individuals across various sectors, including nurses and other healthcare workers at ICE Detention Centers. Plaintiff worked for STGi from Dec. 2018 through July 2020.  She worked for STGi in El Paso, Texas and at the Otay Mesa Detention Facility in California. Plaintiff was a non-exempt employee who earned hourly wages, plus shift differentials, bonuses, and cash-in-lieu of benefits payments provided under the McNamara-O'Hara Service Contract Act.  At all times, STGi has denied wrongdoing or liability to Plaintiff, the California Class, the FLSA Collective, or other current and former employees.  Decl. of Lauren N. Vega ("Vega Decl."), ¶ 2

After Plaintiff's termination of employment, and prior to filing the PAGA notice and complaint in this action, Plaintiff's counsel investigated her wage

- 1 -

claims. This included interviewing Plaintiff and other witnesses, issuing Plaintiff's personnel file request to STGi, reviewing employment and compensation records, researching government contracts (and corresponding wage obligations), accessing publicly available data sources, searching for similar or related cases, and conducting legal research and analysis. (Vega Decl., ¶ 3.)

On August 10, 2020, Plaintiff filed a Notice of Labor Code Violations with the LWDA ("PAGA notice") and served it upon STGi and the State of California. The PAGA notice identified the legal claims that would ultimately be set forth in the operative complaint. (*See* Vega Decl., ¶ 1, Exhibit ("Ex.") E.)

On August 31, 2020, Plaintiff filed a Class and Collective Action Complaint (Doc. 1), alleging (1) failure to pay all wages owed under the FLSA, (2) failure to pay all wages owed under Labor Code §§ 1194 and 1194.2, (3) failure to pay overtime wages under Labor Code §§ 510 and 1194, (4) failure to timely pay wages at separation of employment under Labor Code §§ 201-203, (5) failure to provide accurate itemized wage statements under Labor Code § 226(a), (6) meal period violations under Labor Code §§ 226.7 and 512, (7) rest period violations under Labor Code §§ 226.7 and 512, and (8) violation of Business and Professions Code §§ 17200 to 17208. October 15, 2020, Plaintiff filed a First Amended Class and Collective Action Complaint, adding claims nine through sixteen under PAGA. (Doc. 3).

On December 18, 2020, STGi filed an Answer. (Doc. 5). The Court then issued a Notice and Order for ENE and CMC. (Doc. 8). On January 7, 2021, counsel for the parties held the Rule 26 conference. Thereafter, the parties filed a Joint Discovery Plan with the Court and exchanged initial disclosures, including production of relevant and preliminary documents and information. On January 18, 2021, Plaintiff prepared for and provided a copy of her confidential ENE statement to the chambers for the Hon. Linda Lopez. On January 28, 2021, Plaintiff served on STGi 55 requests for production of documents and 14

- 2 -

interrogatories, tailored toward issues pertaining to obtaining documents and information necessary for class and collective action certification.  Vega Decl. ¶ 5.

On February 1, 2021, in advance of the scheduled ENE, STGi informally shared with Plaintiff's counsel important data points regarding the class and collective size and composition to help facilitate resolution of the matter at the ENE, including: (a) total number of individuals in the putative California class, FLSA collective, and PAGA group, (b) amount of alleged unpaid overtime retroactively paid by STGi to each of these groups, (c) the number of pay periods in the PAGA period.  Counsel for the parties also met and conferred on various merits and discovery issues in advance of the ENE.  (Vega Decl., ¶ 6.)

The Court held an ENE on February 8, 2021 at 10:30 a.m., which was attended by Plaintiff Ana Garcia, her counsel of record, along with STGi's corporate representatives and defense counsel of record.  The case did not resolve. (Vega Decl., ¶ 7.)  The Court held a CMC and subsequently issued the Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings.  (Doc. 16).

Throughout February and March, Plaintiff investigated the nature of retroactive payments by STGi to putative class and collective members.  At this time, the parties agreed to mediate the case.  The parties agreed to Lynn Frank, an experienced mediator of complex and class action litigation.  The parties sought an extension of pending litigation deadlines to facilitate these resolution efforts. (Doc. 23).  The parties then conferred regarding the data, documents, information, and sample size necessary for a successful mediation.  Plaintiff provided an additional list of information and documents that would be necessary for her counsel and forensic accountant to evaluate with respect to liability and damage exposure.  STGi responded and the parties agreed to sampling and other terms for the mediation.  (Vega Decl., ¶ 8.)

Counsel for the parties met and conferred regarding discovery issues and the scope of the documents to be produced in advance of mediation. Through

- 3 -

Plaintiff's original statutory records requests, Initial Disclosures, discovery, third party investigation, and informal mediation document exchange processes, Plaintiff ultimately obtained a 20 percent sampling of employee employment and payroll records (*e.g.*, Excel payroll data, a legend for payroll codes, ADP wage statements, time entry logs, payroll records), relevant data for the putative class, collective and PAGA groups (*e.g.*, total number of current/former non-exempt employees, total workweeks and pay periods, list of job titles for positions eligible for relevant forms of remuneration, alleged cash-in-lieu of benefits payments, and total amount of retroactive payments), to evaluate and ultimately reach a fair, reasonable, and adequate settlement for the class.  Furthermore, Plaintiff obtained and assessed each of the relevant written employment policies concerning issues relating to overtime pay, meal and rest periods, employee timekeeping, fringe benefit payments under the Service Contract Act, worksite information, among other documents that Plaintiff would have relied on to support her motion for class certification.  (Vega Decl., ¶ 9.)

Due the volume of the payroll information and required analysis, Plaintiff's counsel retained an economic consultant to provide a forensic account of how STGi was paying overtime, the amount of alleged underpayments resulting from Defendant's method of calculating the regular rate of pay, among other calculations regarding Defendant's total liability exposure for the California and federal wage claims at issue.  (Vega Decl., ¶ 10.)

On July 18, 2021, the parties attended mediation with mediator Lynn Frank.  The negotiations remain under the mediation privilege.  Mediation lasted into the late evening, and was cordial but adversarial and involved comprehensive discussions regarding the legal issues and prospective liability alleged.  During the negotiations, the Parties agreed to limit the scope of the putative class and collective from all of Defendant's non-exempt employees within the statutory period (as pled in the original complaint) to only those who worked at the ICE

- 4 -

1   Detention Centers.  At 10:00 p.m. on the day of mediation, the parties signed a
2   Memorandum of Understanding to resolve the case.  (Vega Decl., ¶ 11.)

3       On September 27, 2021, Plaintiff filed a Second Amended Class and
4   Representative Action to reflect the narrowed class and collective definitions.
5   Settlement negotiations then continued as the parties negotiated the long-form
6   Class and Collective Action Settlement Agreement, which was fully executed by
7   the parties on February 1, 2022.  Vega Decl. ¶ 12.  The Parties later corrected a
8   typographical error on one of the dates in Settlement.  *See* Vega Decl., ¶ 1, Ex. D.

9   **B.    Overview of the Settlement Terms**

10      The parties agreed to settle the case for the "Gross Settlement Amount" of
11  $2,443,000, which includes a Settlement Credit of $193,471 for post-lawsuit funds
12  paid by STGi to certain California and FLSA Collective Members (*i.e.*, the
13  retroactive wage payments aforementioned).  The Settlement is memorialized in
14  the Parties' "Class and Collective Action Settlement Agreement" (attached as
15  Exhibit A to Vega Decl., hereinafter referred to as the "Settlement" or "S.A.").
16  The Settlement provides compensation to the "California Class" and to the "FLSA
17  Collective," respectively, defined in the Settlement as follows:

18      California Class: "any and all non-exempt employees who worked in the
19  ICE Detention Centers for Defendant in California during the "California Class
20  Period" [Aug. 31, 2016 through Oct. 16, 2021]."  (S.A., p. 5.)

21      FLSA Collective: "any and all non-exempt employees who worked in the
22  ICE Detention Centers for Defendant [STGi] in the United States of America
23  other than the State of California during the FLSA Collective Period [Aug. 31,
24  2017 through Oct. 16, 2021]."  (S.A., p. 7.)

25  •   Gross Settlement Amount of $2,443,000, which will increase
        proportionately for each additional workweek over 9,385 for the
26      California Class or 91,046 for the FLSA Collective.  (S.A., p. 7
        [GSA], pp. 18-19 [Pro Rata Adjustment Clause].)  The parties agree
27      the Gross Settlement Amount is reduced by a Settlement Credit of
28      $193,471 to account for post-lawsuit funds paid by STGi to certain

-5-

California Class Members and FLSA Collective Members.   This Settlement Credit reduces the total out-of-pocket amount STGi will pay under the Settlement to $2,249,529. (S.A., pp. 2, 7.)

- <u>Employer-side payroll taxes</u> on the taxable wage portions of the Settlement Payments shall be paid entirely by STGi.  (S.A., pp. 2, 17.)

- <u>Settlement Amount</u> to be allocated to putative class members on a pro rata basis based on the number of workweeks worked during the respective California Class and FLSA Collective Periods.  The Net Settlement Amount is based on the amount of money remaining after deducting (i) Class Counsel's attorneys' fees and costs, (ii) the Service Award to the Class Representative, settlement administration costs, (iii) the Settlement Credit, and (iv) payments to the California Labor and Workforce Development Agency (LWDA) in connection with the PAGA settlement.  (S.A., pp. 7-8.)

- <u>Attorneys' Fees</u> of up to 33 percent of the Gross Settlement Amount. (S.A., p. 21.)  <u>Litigation Costs</u> up to $25,000.  (S.A., p. 21.)  <u>Service Award</u> of up to $10,000 to Plaintiff Garcia.   (S.A., p. 21.) <u>Administration Costs</u> not to exceed $35,000.  (S.A., p. 19.)

- <u>PAGA Payment</u> of $75,000 for settlement of civil penalties of the PAGA: 75% ($37,500) paid to the California Labor & Workforce Development Agency ("<u>LWDA</u>") and 25% ($18,750) provided to the California Class Members who worked employees who worked at any time during the PAGA Period (Aug. 10, 2019 through Oct. 16, 2021).  (S.A., p. 8.)

Although Plaintiff does not intend to request at the final approval stage the maximum amount of attorneys' fees (33%) or maximum costs ($25,000) provided by the Settlement, using these amounts to illustrate the distribution of the Gross Settlement Amount results in a Net Settlement Amount as follows:

| | |
|---|---|
| Gross Settlement Amount: | $2,443,000 |
| Settlement Credit (minus): | ($193,471) |
| Attorneys' Fees (33% of GSA) (minus): | ($806,190) |
| Litigation Costs (minus) | ($25,000) |
| Settlement Admin. Costs (minus): | ($35,000) |

- 6 -

| | |
|---|---|
| Service Award (minus): | ($10,000) |
| PAGA Payment (separately allocated): | ($75,000) |
| **Net Settlement Amount** | **$1,298,339.00** |
| *To CA Class* | *$727,069.84* |
| *To FLSA Collective* | *$571,269.16* |

(Vega Decl., ¶ 14.)  This results in an average estimated Settlement Payment of $5,120 for California Class Members ($727,069.84 / 142 employees), and $448 for the FLSA Collective Members ($571,269.16 / 1,273 employees).  (Vega Decl., ¶ 17.)  Notably, these estimates are depreciated and will be higher at final approval, as Plaintiff's costs are less than $25,000, Class Counsel will request attorneys' fees in an amount less than 33%, some individuals will likely opt out of the Settlement, and the settlement administration costs may come in at less than the amount quoted.  (Vega Decl., ¶ 17.)  Furthermore, the Settlement itself provides a safeguard against depreciation of the Settlement via the Pro Rata Adjustment Clause, which triggers to automatically increase the Gross Settlement Amount if the total workweeks exceed certain thresholds.  (S.A., pp. 18-19, § 64.)

The California Class Settlement Fund (56% of the NSA) and FLSA Collective Settlement Fund (44% of the NSA) will be distributed through individual settlement checks to members of the California Class and FLSA Collective, based on a ratio calculated by dividing each respective Individual's Weeks Worked by the Total Weeks Worked during each of the respective California Class Period and FLSA Collective Periods. (S.A., §§ 57, 59, pp. 14-17.)  The same allocation method will apply to PAGA Members who worked during the PAGA Period for the PAGA Payment.  (S.A., § 58, pp. 15-16.)

For the California Class, 10% shall be reported as wages (with employer-side payroll taxes paid by STGi) and 90% reported as 1099 earnings.  (S.A., § 57, p. 15.)  This penalty-heavy division is due to STGi's prospective exposure to significant statutory penalties under the Labor Code.  Conversely, for the FLSA Collective, 50% shall be reported as wages (with employer-side payroll taxes paid

- 7 -

by STGi) and 50% reported as 1099 earnings.  (S.A., § 59, p. 16.)  This even split is due to STGi's primary exposure to unpaid wage recovery, paired with a corresponding amount of liquidated damages under 29 U.S.C. § 260.  (*See generally* Vega Decl., ¶ 23.)

## C.      Settlement Administration and Notice Procedures

The parties selected Phoenix Settlement Administrators to administer the settlement (the "Administrator").  (S.A., p. 9.)  Within 30 days of a court order granting preliminary approval, STGi shall provide the names, last known addresses, email addresses, social security numbers, and workweeks for the California Class and FLSA Collective (the "Class and Collective Data").  (S.A., p. 19.)  Before mailing the Notice of Class and Collective Settlement ("Notice"), the Administrator will run the Class and Collective Data through the National Change of Address database and use the most recent available data from that source or from STGi's records to ascertain the proper mailing address.  The Administrator will also attempt to locate the correct address for any individual whose Notice is returned as undeliverable. (S.A., pp. 19-20.)

The proposed Notice provides an estimate of the amount of each individual's Settlement Payment and the number of workweeks worked during either the FLSA Period or Class Period and/or PAGA Period, as applicable.  (Notice, p. 6, § 8 ["How much will my payment be?"].)  Individuals may dispute the number of workweeks, and the Notice explains how to write a letter and what to include to dispute or clarify the workweeks stated.  Lastly, the Notice explains the scope of the release, how to obtain more information, and will state the date of the Final Approval hearing.  (S.A., Ex. 1 [Notice].)

The proposed Notice explains to FLSA Collective and California Class Members three options with their corresponding deadlines: (1) do nothing, (2) exclude yourself, and (3) object.  For Option 1, the Notice explains to California Class Members that they will be bound by the Settlement if they do not

- 8 -

request exclusion via Option 2 or object via Option 3. (S.A., Ex. 1 [Notice, pp. 1-2.]) For FLSA Collective Members, the Notice informs them that if they do nothing (Option 1), they will receive an FLSA Settlement Check, and if they endorse that check they will "have opted into, and agreed to be bound by, the FLSA Settlement." The Notice advises FLSA Collective Members how to exclude themselves (Option 2), which would preclude them from receiving an opportunity to opt in via endorsement of the FLSA Settlement Check, and how to object (Option 3). (S.A., Ex. 1 [Notice].) Class and Collective Members have 45 days following the date of mailing to make a decision to do nothing, exclude themselves, or object. (S.A., p.5, ¶ 8 ["Consideration Period"]). Even if FLSA Collective Members elect to "do nothing," they must still opt in by signing their respective FLSA Settlement Check upon receipt to be bound by the Settlement; if not, they will not consent to the action and will not be bound by the Settlement. (S.A., pp. 16-17, § 59.)

Because this case involves employees across the United States employed under federal government contracts, the parties selected HireHeroes USA as the *cy pres* recipient due to the organization's mission of helping veteran servicemembers (and their spouses) nationwide with employment and hiring prospects. (S.A., § 63; Vega Decl., ¶ 18.)

**D.    Distribution and FLSA Consent Procedures**

Within 20 days of the later of the Effective Date of Settlement, STGi will deposit $2,249,529 (the Gross Settlement Amount less the Settlement Credit) to the Administrator. (S.A., p. 23, § 75.])

Within 15 days of receipt of the funds, the Administrator will make all required distributions, including Plaintiff's service award, the LWDA and PAGA Member's respective shares of the PAGA Payment, the attorneys' fees and costs, as well as the California Class Settlement Payments and the FLSA Collective Settlement Payments. California Class Members who did not opt-out in response

- 9 -

to the Notice will be mailed their individual share of the California Class Settlement Fund, without the need to submit a claim form.  All PAGA Members will be mailed their share of the PAGA Payment.  (S.A., p. 23, § 75.])

FLSA Collective Members who did not request exclusion in response to the Notice will be mailed an FLSA Settlement Check with their individual share of the FLSA Collective Settlement Fund.  The FLSA Settlement Check will allow FLSA Collective Members to give written consent to opt-in to the Settlement by virtue of their endorsement of the FLSA Settlement Check, which will state:

> By endorsing and negotiating this check, I consent to join the lawsuit entitled *Ana Garcia v. STG International, Inc.* United States District Court for the Southern District of California, Case No. 3:20-cv-01701-AJB-LL (the "Class/Collective Action"), pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for purposes of opting in to the FLSA Collective and participating in the FLSA Collective Settlement. I further understand and agree that my endorsing and negotiating this check constitutes a full and complete release against the Released Parties of any and all claims, rights, demands, liabilities and causes of action, whether known or unknown, that were asserted or reasonably could have been asserted based on the facts already alleged in the operative complaints in the Class/Collective Action for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, arising during the period from August 31, 2017 through October 16, 2021, including, but not limited to, failure to pay minimum wage or failure to pay overtime under the FLSA ("Released FLSA Claims") and that a copy of my check may be filed with the Court, with personal information (other than my name) redacted.

(S.A., pp. 16-17, § 59.)  The Notice, which FLSA Collective Members will have received after preliminary approval (and prior to receiving the FLSA Settlement Check), further advises FLSA Collective Members of these Settlement terms.  (S.A., Ex. 1 [Notice, p. 7].)  If an individual wishes to consent to the action and participate in the Settlement, he or she may cash the FLSA Settlement Check.  If an individual wishes to not participate in the Settlement, he or she may opt-out in response to the Notice, or decline consent and refuse to cash the FLSA Settlement Check.  A copy of the redacted consent portion of an FLSA Collective Member's

- 10 -

1  FLSA Settlement Check will then be filed with the Court following final approval.
2  (S.A., pp. 16-17, § 59.)   Funds unpaid after distribution due to returned or void
3  checks (i.e. not cashed or returned within 180 days) will be distributed to Hire
4  Heroes USA, a veteran employment organization that offers coaching, resume
5  help, workshops, mentoring, job boards, career fairs, and more to thousands of
6  job-seeking veterans across the country. (S.A., pp. 18, § 63.)

7  **E.    The "Released Claims"**

8  <u>California Class Members</u> who do not opt out shall, upon final approval,
9  release STGi and its Released Parties (i.e., "parents, affiliates, divisions,
10 subsidiaries…" (S.A., pp. 8 ["Released Parties"]) of all claims "that were alleged
11 or which could have been alleged in the Complaints" during the California Class
12 Period of August 31, 2016 through October 16, 2021." (S.A. § 76.)   <u>FLSA</u>
13 <u>Collective Members</u> who opt in by endorsing their individual FLSA Settlement
14 Check after final approval, release STGi and its Released Parties of all claims
15 "that were alleged or which could have been alleged in the Complaints" and arise
16 under the FLSA during the FLSA Collective Period of Aug. 31, 2017 through
17 October 16, 2021.  (S.A., § 78.)  <u>PAGA Members</u>, upon final approval, release
18 STGi and its Released Parties of all claims "that were alleged or which could have
19 been alleged in the Complaints" and arise under the PAGA during the PAGA
20 Period of August 10, 2019 through October 16, 2021.  (S.A., § 77.)   <u>Plaintiff</u>
21 <u>Garcia</u> will agree to a general release of all wage and hour and other claims
22 against STGi and its Released Parties. (S.A., § 79.)

23  **III.   LEGAL ARGUMENT**

24 The Ninth Circuit has a strong policy favoring settlements in class actions.
25 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  When
26 parties settle before class certification, the court must "peruse the proposed
27 compromise to ratify both the propriety of the certification and the fairness of the
28 settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).   A

- 11 -

reviewing court must therefore engage in two, separate inquiries: (1) whether the proposed class meets the certification requirements, and (2) whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *Id.*  At the preliminary approval stage, the reviewing court considers whether it is likely to approve of the proposal and certify the class.  Fed. R. Civ. P. 23(e) (1) (B).

## A. Provisional Class Certification Under Rule 23 and Conditional Certification Under 29 U.S.C. § 216(b) is Appropriate

Regarding the first inquiry—conditional class and collective certification for settlement purposes—Federal Rule of Civil Procedure 23 establishes four prerequisites for *class* certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a) (1)-(4).  Additionally, under Rule 23(b) (3), common questions must predominate over individual questions and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*  The Court does not finally certify a class when granting preliminary approval of a settlement for the purpose of directing notice to class members, but rather determines whether "the court will likely be able to . . . certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e) (1) (B).  "[A] court that certifies a class must appoint class counsel" based on the Rule 23(g) factors.

Similarly, under the FLSA, an employee may bring a collective action on behalf of other similarly situated employees.  *See* 29 U.S.C. § 216(b).  A court's preliminary certification of an FLSA collective action is "conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated requirement of section 216(b)."  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018).  The lack of Rule 23 requirements for collective action settlements "necessarily impose[s] a lesser burden."  *Id.* at 1117.  "If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit,

- 12 -

which requires the settlement to constitute a fair and reasonable resolution of a bona fide dispute." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at \*3 n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases) (citations omitted).

Plaintiff satisfies the standards set forth in Rule 23(a), Rule 23(b) (3), Rule 23(g), as well as 29 U.S.C. § 216(b), for the following reasons.

### 1.      Numerosity – *142 Class Members / 1,273 Collective Members*

Under Rule 23(a) (1), the numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." *Id.* "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]" *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). There are an estimated 142 California Class Members and 1,273 FLSA Collective Members. (Vega Decl., ¶ 17.) Therefore, the numerosity requirement is satisfied.

### 2.      Commonality – *All claims are for wage and hour violations*

Under Rule 23(a) (2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a) (2). Commonality is met if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) (2) commonality requirements are "minimal" and "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1988). Only "a single common question" required. *Dukes*, 564 U.S. at 359. Here, Plaintiff's claims concern only those employees who worked at ICE Detention Centers for STGi within the statutory limitations periods. Plaintiff's allegations concern common STGi policies, at common locations, for similar positions, under company-wide payroll procedures. Resolving these questions together, rather than through a series of individual cases concerning the same or similar employee experiences, resolves the class-wide issues "in one stroke," and satisfies commonality requirement.

- 13 -

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

### 3.   Typicality – *Plaintiff suffered the same alleged harms as others*

Under Rule 23(a) (3), the typicality requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a) (3).  The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted).  The representative claims are typical under Rule 23(a) (3) if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Plaintiff's claims are typical of the putative class because she was a non-exempt employee of STGi in California during the Class Period at an ICE Detention Center.  Plaintiff is particularly similarly situated with respect to the FLSA Collective Members, as she worked in El Paso, Texas for STGi from December 2018 through May 2020.  Her employment claims are typical of those of the Class and Collective.

### 4.   Adequacy of Representation – *There are no conflicts*

Under Rule 23(a) (4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4).  The Court must ask two questions: "(1) do the named plaintiffs and their counsels have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsels prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted).  The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011).  Neither Plaintiff nor her counsel has a conflict with the Class.  Plaintiff elected to file a class action as opposed to an individual lawsuit or administrative claim for the

- 14 -

benefit of her former coworkers.  The maximum $10,000 allocated to a Service Payment out of a $2.4+ million total Settlement is not disproportionate such that it renders Plaintiff an inadequate representative or creates a conflict at the preliminary approval stage.  Plaintiff will provide justification for the Service Award at the final approval stage.  *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  Plaintiff's counsel further represents that they have no conflicts of interest with the Class.  (Vega Decl., ¶ 19.)   Plaintiff and counsel represent they will continue to prosecute this lawsuit through final approval.  (Vega Decl., ¶ 19.)  Thus, adequacy is met for purposes of certification.

### 5.        Predominance & Superiority – *Class-wide resolution is proper*

Rule 23(b) (3)'s requirements must also be satisfied, in addition to those of Rule 23(a).  Under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b) (3).  Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  For settlement purposes, a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote greater efficiency.  In a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at 620.

In this case, Plaintiff seeks to represent only those non-exempt, hourly employees who worked for STGi at ICE Detention Centers during the statutory periods.  Plaintiff contends there that all FLSA Collective and California Class Members were subject to the same written policies throughout the Class and FLSA Period and that a determination as to whether the application of those

- 15 -

policies are unlawful as to one employee would determine whether it is unlawful for all. (Vega Decl., ¶ 20.) Because liability would be determined by looking at STGi's written policies and employment practices, litigation of these issues in a class action as opposed to a series of individual actions is most efficient. (Vega Decl., ¶ 20.) The common issues and claims pled predominate and the class action device is a superior method for adjudicating the dispute.

*Plaintiff has satisfied Rule 23(a) and Rule 23(b) (3), and 29 U.S.C. § 216(b) and asks that the Court conditionally certify the Class and Collective.*

### 6. Appointment of Class Counsel – *Counsel satisfies Rule 23(g)*

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g) (2). The Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g) (1)(A). Here, as set forth in Plaintiff's counsel's declaration, counsel has engaged in significant pre-litigation investigation, witness interviews, formal and informal discovery, damage analysis, mediation, and litigation efforts on behalf of the putative Class and Collective. (Vega Decl., ¶¶ 3-11.) Plaintiff's counsel has experience litigating class actions on behalf of both plaintiffs and defendants. (Vega Decl., ¶¶ 27-38.) Counsel's litigation practice focuses primarily on wage and hour claims under California and federal law. *Id.* Plaintiff's counsel has invested significantly in the investigation, litigation, and resolution of this case and will devote the necessary resources to bring the matter through conclusion. (Vega Decl., ¶ 21.) Plaintiff respectfully asks the Court to provisionally designate Plaintiff's counsel as class counsel in this case.

- 16 -

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

**B.      The Proposed Settlement Warrants Preliminary Approval**

A court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).   Courts must give "proper deference" to settlement agreements because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon,* 150 F. 3d at 1027 (citations omitted).   Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).   Rule 23(e)(2) provides that a court may approve a proposed class action after considering whether: (A) the class representative and counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i)  costs, risks, and delay of trial and appeal, (ii) effectiveness of any proposed method of distributing relief to the class, including the method of processing claims, (iii) the terms of any proposed award of attorney's fees, and (iv) any agreement required identified under Rule 23(e)(3); and (D) the proposal treats class members equitably.

With respect to the FLSA collective action settlements, if a bona fide dispute exists, "[c]ourts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply because of the inherent differences between class actions and FLSA collective actions." *Khanna v. Inter-Con Sys., Inc.*, No. 2:09-cv-02214-KJM-EFB, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013) (internal quotations and citations omitted).   "Under this approach, a 'district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA.'" *Cavazos*

*v. Salas Concrete Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL 506005, *6 (E.D. Cal., Feb. 18, 2022). Each factor is addressed in turn.

### 1.  Adequacy of Representation

Rule 23(e) (2) (A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." *Id.* This analysis is "redundant of the requirements of Rule 23(a) (4) and Rule 23(g), respectively." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020). For the same reasons as discussed above concerning adequacy, Plaintiff and her counsel have and will continue to adequately represent the Class.

### 2.  Arm's Length Negotiation

Rule 23(e) (2) (B) requires the Court to consider whether "the proposal was negotiated at arm's length." *Id.* Here, the Settlement is the result of adversarial disputes and negotiations among experienced employment counsel, facilitated by experienced mediator Lynn Frank. Mediation that lasted late into the evening in July 2021 and occurred only after months of preparation once Plaintiff's counsel obtained, through various channels, the documents and data Plaintiff would have needed to move for class and conditional certification and prepare for trial. (Vega Decl., ¶¶ 8-11.) The Settlement was heavily negotiated on each salient point and executed by the Parties on Feb. 1, 2022. *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020) ("The district court . . . correctly determined there was no collusion because," among other things, "the parties settled via arm's length negotiations before an experienced mediator."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

### 3.  Adequacy of Relief Provided to the Class

Rule 23(e) (2) (C) requires the Court to consider whether "the relief provided for the class is adequate, taking into account" the numerous factors set forth below. *Id.* The amount offered in the proposed settlement agreement is

- 18 -

generally considered to be the most important consideration of any class settlement.  *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)).  A detailed explanation of the valuation and settlement of claims is set forth in Paragraph 23 of Ms. Vega's declaration.

### i.    Costs, risks, and delay of trial and appeal

In reaching the decision to settle this case, Plaintiff and counsel considered the risks of proceeding with the litigation.  These threshold risks involved a denial of class certification on all or some of the claims, the burdens of proof to establish liability, the merits of the defenses raised by STGi, the difficulties in establishing damages for purposes of proof at trial, the likelihood of success at trial, and the appeal in the event of a favorable judgment.  (Vega Decl., ¶ 22.)  Continued litigation would have delayed recovery to the Class and FLSA Collective.  A legitimate controversy exists as to each cause of action, with STGi maintaining legitimate defenses, particularly with respect to the limitation of some of the derivative penalties, whether Plaintiff would be able to prove willfulness under the FLSA and for purposes of California waiting time penalties, among other arguments.  In contrast, because of the Settlement, the California Class and FLSA Collective will timely receive relief and avoid the risk of an unfavorable judgment.  (Vega Decl., ¶ 22.)  Where, as here, the Settlement provides robust compensation relief in the face of uncertainty, delay, and further expenses, this factor weighs strongly in favor of approval.  *See Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948, 966 (9th Cir. 2009); *see also Hanlon,* 150 F.3d at 1027.

### ii.    Effectiveness of proposed method of distributing relief

California Class and FLSA Collective Members will be identified through STGi's employment records.  Additionally, the Administrator will search for each member's most recent address before sending the Notice.  The Notice provides information to Class Members regarding how to update their address.  (Vega

- 19 -

Decl., ¶ 1, Ex. A.)   The Administrator will calculate the California Class Settlement Check and the FLSA Collective Settlement Check for each participating Class or FLSA Collective Member (*i.e.*, those who do not request exclusion) based on the number of weeks he or she was employed as a non-exempt employee or hourly worker by STGi, divided by the total number of weeks worked by all employees included in the FLSA Collective or California Class, as applicable.   The workweek method of calculating and distributing relief is fair, simple, and effectively provides a sliding scale of relief to each Class and Collective Member based on the number of respective weeks he or she worked during the Class and/or FLSA Collective Period.   (Vega Decl., ¶ 24.)   All California Class Members will receive payment by mail unless they opt-out of the Settlement.   All FLSA Collective Members may elect not to receive their respective FLSA Settlement Check, but for those that do, they may consent to join the Settlement by affirmatively endorsing their FLSA Settlement Check.

Regarding the FLSA opt-in procedure under 29 U.S.C. § 216(b), this method of consent has been recently approved in other hybrid FLSA cases and allows for the hybrid settlements to be resolved simultaneously and without separate notice procedures.   *See, e.g., Cavazos v. Salas Concrete, Inc.,* 2002 WL 506005, *3, n. 5 (E.D. Cal., Feb. 18, 2022).   "Courts in the Ninth Circuit have found such FLSA waivers enforceable where there is no concern that the settlement agreement adequately compensates the class for the release of all claims."   *Contreras v. Armstrong Flooring, Inc.*, 2021 WL 4352299, at *3, 8 (C.D. Cal., July 6, 2021) (quoting *ConDawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 6138467, at *7 n.2 (C.D. Cal. July 9, 2019); *but see Thompson v. Costco Wholesale Corp.*, Case No. 15-CV-2778-CAB-WVG (S.D. Cal., May 11, 2017).   As one district court explains:

> Because the Ninth Circuit has recognized that "the proper means of managing a collective action . . . is largely a question of 'case

- 20 -

management,'" and because Defendant will not seek decertification given the settlement of this action, the Court conducts the analysis of whether the 28 potential members of the collective meet the requirements of the FLSA, construing this motion for final approval as a motion to conditionally certify a collective action.

*Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955, at *1, 5 (N.D. Cal., Oct. 18, 2021) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 [9th Cir. 2018]).  Section 216(b) of the FLSA requires employees to give their consent in writing to become a FLSA Collective Member.  Plaintiff's proposed opt-in method for the FLSA Collective affords FLSA Collective Members the opportunity to request exclusion at the Notice stage if they wish to proceed independently.   For those who do not request exclusion after preliminary approval, those FLSA Collective Members may later opt-in by endorsing and cashing the FLSA Settlement Check, which includes pre-printed language regarding on their decision to consent to the action, accept or decline payment, and release or maintain their respective FLSA wage claims.   The Settlement provides a straightforward mechanism for FLSA Collective Members to make an informed decision whether to consent to the action and participate in the Settlement.   For those individuals who endorse the check and consent to the action, Plaintiff will file a list of names of participating FLSA Collective Members after final approval in a compliance declaration post-final approval, along with a redacted copy of the consent instrument should the Court require it. The "settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA" and should be approved accordingly.   *See Cavazos v. Salas Concrete, Inc.,* 2002 WL 506005, *3, n. 5 (E.D. Cal., Feb. 18, 2022).

### iii.   Terms of the proposed award of attorneys' fees and costs

The Ninth Circuit has held that in cases where state law claims predominate, state law governs the method of calculating fee awards.   *See Mangold v. Cal. Pub. Utils Comm'n*, 67 F. 3d 1470, 1478 (9th Cir. 1995) (the

- 21 -

Ninth Circuit has "applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The California Supreme Court holds that in common fund cases, a trial court may award class counsel a fee out of that fund with an appropriate percentage of the fund. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503-06 (2016). The Ninth Circuit has held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp*, 290 F.3d 1043, 1047 (N.D. Cal. 2002), though California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008). "[R]egardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 66, n.11 (2008); *see e.g., Laffitte*, 1 Cal. 5th at 485-87 (affirming trial court's granting of a fee request for one-third of a $19 million settlement).

Here, the Settlement provides that the maximum amount of fees is 33 percent of the Gross Settlement Amount. This provision does not "call[] into question the fairness of the proposed settlement" as it is in line with similar cases. *Pokorny v. Quixtar Inc.*, No. 07-0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011); *see, e.g., Martin v. AmeriPride Svs., Inc.*, 2011 WL 2313604, *8 (S.D. Cal. June 9, 2011) ("courts may award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million"). The Settlement provides for reimbursement of up to $25,000 in litigation expenses. If the Court grants the Motion, Plaintiff will detail the fees and costs at final approval stage. (Vega Decl., ¶ 41.)

### iv. Agreements ancillary to the proposed settlement

Rule 23(e) (3) requires the parties "file a statement identifying any agreement made in connection with the [settlement] proposal." *Id.* Other than a

- 22 -

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)

correction the Settlement attached as Exhibit D to Ms. Vega's declaration, there are no ancillary agreements to the Settlement Agreement.  (Vega Decl., ¶ 19.)

### 4.      Equitable treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the proposed class action settlement "treats class members equitably relative to each other." *Id.*  In doing so, the Court determines whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated."  4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020).

The Settlement provides for a Service Award to Plaintiff of up to $10,000. This is an additional payment for Ms. Garcia's initiative and courage to seek counsel and file a lawsuit, rather than bring a separate, standalone individual wage claim.  The requested Service Award of accounts for less than half of one percent (0.41%) of the Gross Settlement Amount.  There have been no other lawsuits filed by other employees on a class-wide basis, nor have there been any other PAGA notices lodged against STGi with the LWDA.  Without Plaintiff's initiative in pursuing this case, there would likely be no recovery and the statute of limitations for the alleged wage and hour claims would have continued to run on current and former employees unwilling or unknowing of their ability to recover lost wages. (Vega Decl., ¶ 26.)  Because of Plaintiff's efforts, these California Class Members and FLSA Collective Members who decide to participate in the Settlement receive a substantial recovery.  The Service Award is justified in light of the reputational risk Plaintiff assumed by litigating her claims against her current employer.  *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) (discussing risks for employees who file wage and hour class actions);

- 23 -

*Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily learn that a prospective employee served as a plaintiff through the internet); *La Fleur v. Medical Management Intern, Inc.*, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 fear that the suit may harm future job prospects).

Furthermore, as detailed in Ms. Vega's declaration, the Settlement is fairly and logically apportioned among the California Class Settlement Fund (56%) and FLSA Collective Settlement Fund (44%).  (*See* Vega Decl., ¶¶ 15-16.)  Plaintiff's counsel retained an economic forensic accountant as an expert witness in this case to help assess the liability exposure among the two groups.  The mediation was at all times based on this data and the Settlement apportionment among the Class and Collective reflects those findings.  (*See* Vega Decl., ¶¶ 22, 23.)

## C.     The Court Should Approve the PAGA Settlement

Any settlement of PAGA claims must be approved by the Court.  Labor Code § 2699(l) (2).  The proposed settlement must be sent to the LWDA at the same time it is submitted to the Court.  *Id.*  Plaintiff submitted the Settlement to the LWDA prior to filing the instant Motion, and thus this requirement has been satisfied.  (Vega Decl. ¶ 42.)  When a PAGA claim is settled, courts hold that the relief provided for under the PAGA must be genuine and meaningful, consistent with the purpose of the statute to benefit the public.  *Haralson v. U.S. Aviation Services Corp.*, 383 F. Supp.3d 959, 971-972 (N.D. Cal. 2019) (quoting *O'Connor v. Uber Techs., Inc.* (N.D. Cal. 2016) 201 F. Supp. 3d 1110, 1133).)  "Where PAGA claims are settled in the same agreement with the underlying Labor Code claims," as is the case here, "courts have also looked at the interplay of the two recoveries to determine whether PAGA's purposes have been served."  *Haralson*, 383 F. Supp. 3d at 971-72.  This Court, like others, should adopt a "sliding scale" whereby "providing fair compensation to class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class

- 24 -

members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Haralson*, 383 F. Supp. 3d at 972. Where a settlement provides "robust" relief, a greater reduction in PAGA penalties is supported. *Haralson*, 383 F. Supp. 3d at 972.

Here, the $75,000 PAGA allocation is within the range approved by courts and should be approved. See *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, *9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25% of gross settlement was reasonable, as it "falls within the zero to two percent range for PAGA claims approved by courts."); *Magadia*, 384 F. Supp. 3d at 1101 (collecting cases where $10,000 in PAGA penalties were approved in gross settlements of $900,000 and $6.9 million); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2%); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3%). The enforcement nature of the PAGA provides employees and counsel discretion to effectuate the objectives of the PAGA in class settlements. $75,000 from the Gross Settlement Amount will be allocated to the PAGA claim: 75% ($56,250) to the LWDA and the remaining 25% ($18,750) to the PAGA Members. This amount is reasonable given the Court's ability to reduce penalties "based on the facts and circumstances of a particular case [.]" Labor Code § 2699(h).

## IV.   CONCLUSION

Plaintiff requests that the Court (i) conditionally certify the California Class under Rule 23(a) and the FLSA Collective under 29 U.S.C. § 216(b); (ii) appoint Plaintiff as the class representative and Plaintiff's counsel as Class Counsel under Rule 23(g); (iii) preliminarily approve the Settlement under Rule 23(e) and under 29 U.S.C. § 216(b); (iv) approve distribution of the Notice; (v) approve the proposed allocation to PAGA Penalties under Labor Code § 2699(l) (2); and (vi) set a final approval hearing within 90 days.

Respectfully submitted,

Dated: March 25, 2022

FERRARO VEGA EMPLOYMENT LAWYERS, INC.

_____
Lauren N. Vega
Nicholas J. Ferraro
*Attorneys for Plaintiff Ana Garcia*

Memo. of Points & Auth. In Support of Plaintiff's Motion for
Prelim. App. of Class & Collective Action Settlement - 20-CV-1701-AJB (AHG)